UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
GARY S. TOLE,

                        Plaintiff,

        - against -                           **MEMORANDUM AND ORDER**

GLENN MILLER PRODUCTIONS, INC.,               12 Civ. 6660 (NRB)

                        Defendant.
-----------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

        Plaintiff Gary S. Tole ("plaintiff") brings this diversity action for breach of contract and discrimination on the basis of race against his former employer, defendant Glenn Miller Productions, Inc. ("GMP"). GMP now moves for an order transferring venue from the Southern District of New York to the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, we grant the motion to transfer.

                        **BACKGROUND**[1]


   I. **Factual Background**

_____

[1] The following facts are drawn from the Complaint ("Compl."); Defendant's Memorandum of Law in Support of its Motion to Transfer Venue ("Def. Mem."); the Declaration of David Mackay, Jr. in Support of Defendant's Motion to Transfer Venue ("Mackay Decl."); Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Transfer Venue ("Pl. Mem."); the Declaration of Gary S. Tole in Opposition to Defendant's Motion to Transfer Venue ("Tole Decl."); Defendant's Reply Memorandum in Support of its Motion to Transfer Venue (Def. Reply Mem."); and the Supplemental Declaration of David Mackay, Jr. in Support of Defendant's Motion to Transfer Venue ("Supp. Mackay Decl.").

                        1

Plaintiff is a white male trombonist and band leader who resides in Rancho Cucamonga, California. (Compl. ¶¶ 3, 5.) GMP was formed in 1956 by David Mackay, Sr. to manage the Glenn Miller Orchestra (the "Orchestra"), a leading big band which had been led previously by its eponymous founder. (Id. ¶¶ 4, 6-7.) Although it was originally incorporated in New York, GMP's headquarters and principal place of business are currently located in Naples, Florida. (Mackay Decl. ¶ 9.) The company has not maintained offices or employees in New York since 1992. (Id. ¶¶ 6-10.)

In 2010, GMP was looking to hire a new band leader for the Orchestra. After plaintiff applied for the position, GMP flew him from his home in California to Manhattan to interview with David Mackay, Jr. ("Mackay"), GMP's Chief Executive Officer, Charles DeStefano ("DeStefano"), GMP's President, and Mackay's wife, Constance, GMP's Corporate Secretary. (Compl. ¶¶ 11-12; Mackay Decl. ¶¶ 12-15; Tole Decl. ¶ 3.)

In New York, the group met for dinner on July 18 and again for lunch on July 19. (Compl. ¶¶ 12-14; Mackay Decl. ¶ 16.) The parties agree that plaintiff's potential employment was discussed, but not formally negotiated, at the July 18 meeting. (Compl. ¶ 13; Mackay Decl. ¶ 16.) Plaintiff further alleges that GMP negotiated the key terms of his employment, including

2

its duration and his compensation, during the July 19 meeting. (Tole Decl. ¶ 6.)  He also maintains that GMP offered him the position of leader and music director at that time, which he immediately accepted.  (Compl. ¶¶ 15-16; Tole Decl. ¶ 7.) However, GMP claims that no such negotiation or offer of employment took place during the July 19 meeting; to the contrary, it submits that Mackay sent plaintiff an employment agreement upon his return to Florida, and subsequently negotiated the terms of employment with plaintiff's attorney, Gordon P. Firemark, via telephone.  (Mackay Decl. ¶¶ 17-18.)

On August 12, 2010, more than three weeks after the meeting in New York, plaintiff signed an employment agreement with GMP. (Mackay Decl. ¶ 19; Tole Decl. ¶ 8; Compl. Ex. A, at 7.)  The agreement provided for a three-year term of employment, to commence in January 2011, during which plaintiff could only be terminated for good cause after the first ninety days.  (Compl. Ex. A, at 4-5.)  It also contained a choice of law provision, which states that the agreement "shall be governed by the laws of the State of New York." (Id. at 7.)

On January 12, 2011, plaintiff commenced employment with GMP.  (Compl. ¶ 20.)  Over the course of the next eleven months, plaintiff alleges that GMP repeatedly expressed its disapproval of his hiring and promotion of minority employees.  (Id. ¶¶ 26-

3

37.)  For example, in response to plaintiff's recruitment of two African-American musicians, plaintiff alleges that DeStefano told him, "[t]his is the Glenn Miller Orchestra, not the Count Basie Orchestra."  (Id. ¶¶ 26-28.)  Plaintiff also points to an October 2011 business meeting in Florida attended by Mackay, DeStefano, Mrs. Mackay, and another GMP officer, Greg Parnell, at which Mrs. Mackay allegedly referred to the Orchestra as "white bread and milk" and stated that employing Damien Sanchez, a Cuban-American employee whom plaintiff had previously promoted to assistant road manager, "would not be good for [GMP's] name." (Id. ¶ 35.)

On December 12, 2011, following an incident that occurred while the Orchestra was on tour in Japan, Mackay sent plaintiff a telefax from GMP's offices in Naples informing him that he had been terminated.  (Mackay Decl. ¶¶ 22-23; Tole Decl. ¶¶ 13-15.) While plaintiff alleges that his termination was without cause, (see Compl. ¶ 87), Mackay maintains that GMP had good cause to terminate plaintiff based upon his actions in response to the incident in Japan, as well as other inappropriate conduct throughout his employment, (see Mackay Decl. ¶ 21).

## II.  **Procedural Background**

Plaintiff filed this lawsuit on August 31, 2012, alleging that GMP breached the terms of the employment agreement when it

4

terminated him without cause. (Compl. ¶¶ 47-70, 84-89.) The complaint further alleges that GMP violated the Civil Rights Act of 1871, codified at 42 U.S.C. § 1981, by discriminating on the basis of race when it terminated him on account of his professional association with racial minorities. (Id. ¶¶ 90-92.)

On December 3, 2012, GMP filed the instant motion to transfer venue, which plaintiff opposed on December 14. GMP filed its reply on December 21, 2012. Oral argument was held on July 30, 2013.[2]

## DISCUSSION

### I. Legal Standard

Section 1404(a) permits a district court to transfer a civil action to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of the provision is to "protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation and citation omitted). The burden is on the moving party to make a clear and convincing showing that the action is one that might have been brought in the proposed transferee forum, and that transfer would promote convenience and justice. See Fteja v. Facebook, Inc., 841 F. Supp. 2d 829, 832 (S.D.N.Y. 2012).

---

[2] References preceded by "Tr." refer to the transcript of oral argument.

Where the transferee district is a proper venue, as plaintiff concedes it is here (Pl. Mem. at 5), "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." Schoenefeld v. New York, No. 08 Civ. 3269 (NRB), 2009 WL 1069159, at *2 (S.D.N.Y. Apr. 16, 2009) (citing In re Cuyahoga Equip Corp., 980 F.2d 110, 117 (2d Cir. 1992)) (internal quotation marks omitted). Among the factors to be considered in deciding whether to grant a motion to transfer venue are: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the relative means of the parties; (4) the locus of the operative events; (5) the relative ease of access to sources of proof; (6) the weight accorded to plaintiff's choice of forum; (7) the availability of process to compel unwilling witnesses; (8) the forum's familiarity with the governing law; and (9) trial efficacy and the interests of justice based upon the totality of the circumstances. See Schoenefeld, 2009 WL 1069159, at *2; see also New York Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010).

The above factors do not comprise an exclusive list, nor are they to be applied in a mechanical or formulaic manner. "Rather, they, and any other factors peculiar to the particular

case in question, serve as guideposts to the Court's informed exercise of discretion." <u>Albert Fadem Trust v. Duke Energy Corp.</u>, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002).

## II. <u>Application of Relevant Factors</u>

With the above principles in mind, we will address each of the relevant factors governing a motion to transfer <u>seriatim</u>, based upon the affidavits and other submissions of the parties.

### 1. Convenience of the Witnesses

"The convenience of party and non-party witnesses is the most important consideration in a Section 1404(a) motion." <u>Schoenefeld</u>, 2009 WL 1069159, at *2 (citing <u>Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.</u>, 245 F. Supp. 2d 523, 526 (S.D.N.Y. 2003)). In evaluating this factor, we consider "the materiality, nature and quality of each witness, not merely the number of witnesses in each district." <u>Royal & Sunalliance v. British Airways</u>, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001).

GMP has identified four potential witnesses who would be greatly inconvenienced if the suit were to remain in plaintiff's chosen forum: Mackay, Mrs. Mackay, DeStefano, and Damien Sanchez. Each is mentioned by name in the complaint, each has personal knowledge as to certain of plaintiff's allegations, and each resides and works in Florida. Because these witnesses would be greatly convenienced by litigation in Florida, this

7

factor weighs in favor of transfer.  See Arrow Elecs., Inc. v. Ducommun, Inc., 724 F. Supp. 264, 267 (S.D.N.Y. 1989).

By contrast, plaintiff fails to identify any potential witnesses in either forum.  Despite his assertion that members of the Orchestra would be "the witnesses most familiar with [his] performance as band leader and music director and thus the most knowledgeable about whether there was good cause for [his] termination," (Tole Decl. ¶ 18), he cannot identify a single member who resides in New York.  Indeed, by plaintiff's own admission, the Orchestra members reside in various cities across the United States, and thus proceeding in Florida may be equally if not more convenient for them than proceeding in New York. (Id.)  In such situations, "the Court dismisses from consideration the convenience of witnesses who are located outside both the current and transferee forums."[3]  Wechsler v. Macke Int'l Trade, Inc., No. 99 Civ. 5725, 1999 WL 1261251, at *6 (S.D.N.Y. Dec. 27, 1999).

## 2. Convenience and Relative Means of the Parties

This factor tends to weigh in favor of transfer when the "inconvenience [to the moving party] could be completely eliminated without substantially adding to the non-moving

---

[3] Moreover, as plaintiff has failed to name these potential witnesses, let alone submit affidavits from them attesting that New York would be a more convenient forum in which to proceed, we do not consider their convenience. See Iyalla v. TRT Holdings, Inc., No. 04 Civ. 8114 (NRB), 2005 WL 1765707, at *5 n.8 (S.D.N.Y. July 25, 2005).

party's inconvenience." Frame v. Whole Foods Market, Inc., No. 06 Civ. 7058, 2007 WL 2815613, at *6 (S.D.N.Y. Sept. 24, 2007).

Plaintiff is a resident of California, not New York, and therefore must travel a substantial distance regardless of whether this litigation proceeds in New York or Florida. However, GMP would save considerable time and money if it were to litigate this action in Florida, where its principal place of business and key witnesses are located. Since Tole faces no greater burden litigating this case in Florida, while GMP faces a greater burden litigating it in New York, this factor weighs in favor of transfer. See GE Capital Franchise Fin. Corp., No. 08 Civ. 2025, 2009 WL 1812821, at *6 (W.D.N.Y. June 25, 2009) ("This factor weighs in favor of transfer as Plaintiff would have less of a financial hardship prosecuting this case in Florida than Defendant would have defending it in New York.").

With respect to the parties' relative means, we note at the outset that neither party has presented persuasive evidence on the issue. Although plaintiff submits that he has not secured employment since his termination from GMP, and thus receives no income other than his unemployment benefits, GMP maintains that he owns a production company and currently leads a big band orchestra. (Tole Decl. ¶ 24; Mackay Decl. ¶ 38.) GMP asserts that it is a "small business catering to a niche audience, and

has limited resources to spend on this case," (Mackay Decl. ¶ 39), but as that conclusory statement is unsupported, this factor does not favor either party's position.   See <u>Astor Holdings, Inc. v. Roski</u>, No. 01 Civ. 1905 (GEL), 2002 WL 72836, at *12 (S.D.N.Y. Jan. 17, 2002).

### 3. The Locus of the Operative Events

The location of a lawsuit's operative events is also a "primary factor" in determining a motion to transfer venue.   <u>See Schoenefeld</u>, 2009 WL 1069159, at *3; <u>Smart v. Goord</u>, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998).   Here, there is absolutely no connection between plaintiffs' allegations and New York.   It is clear that plaintiff does not allege any discrimination to have taken place here.   Further, while the parties dispute whether initial negotiation of his employment agreement occurred in New York, it is undisputed that the written agreement was not executed here.   Indeed, the New York meetings occurred several weeks before plaintiff hired California counsel to negotiate the terms of his employment and eventually signed a written employment agreement with GMP.   That the negotiation giving rise to the signing of the agreement occurred in New York is irrelevant, given that the breach of the agreement, and not its formation, is what is at issue in the instant action.   <u>See Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc. v.</u>

LaFarge N. Am., Inc., 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007)
(concluding that the location of the execution of the contract
is the locus in question).

By contrast, the connection between plaintiff's allegations
and Florida is quite clear.  At least some of the negotiation of
plaintiff's employment agreement was conducted during a phone
call between Mackay (in Florida) and plaintiff's attorney,
Firemark (in California).  (Mackay Decl. ¶ 18.)   Mackay
ultimately signed plaintiff's employment agreement in Florida.
(Id. ¶ 19.)  Further, an October 2010 meeting at which plaintiff
alleges Mrs. Mackay to have "expressed her displeasure"
concerning the company's hiring of a Hispanic individual also
took place in Florida.  (Tole Decl. ¶ 11.)  Finally, Mackay made
the decision to terminate Tole in Florida, and sent a telefax
from GMP's Florida office to Tole, who was traveling with the
Orchestra in Chicago at the time, informing him of such
decision.  (Mackay Decl. ¶¶ 20-23.)   Thus, we find that this
factor weighs in favor of transfer.

**4. The Relative Ease of Access to Sources of Proof**

The location of documentary evidence is typically
considered a neutral factor in the transfer analysis.  See Am.
S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.,
474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of

relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.") (internal citation omitted).   There is no reason to depart from this standard approach here.   However, to the extent there are any relevant documents or records relating to the incidents alleged in the Complaint, they are most likely to be found in one of GMP's two offices in the Middle District of Florida.   (See Mackay Decl. ¶ 8.)

### 5. The Weight Accorded to Plaintiff's Choice of Forum

While plaintiffs' choice of forum is generally a substantial consideration, when a plaintiff brings a suit in a forum that has no material connection with the action, this factor should be given little weight.   See Nat'l Union Fire Ins. Co. of Pittsburgh v. St. Paul Fire & Marine Ins. Co., 12 Civ. 1250 (PKC), 2012 WL 1829589, at *5 (S.D.N.Y. May 11, 2012); Iyalla, 2005 WL 1765707, at *6.   Other than being the source of the governing law, New York bears no connection whatsoever with the underlying dispute, entitling plaintiff's choice of forum to little deference as a result.

Such deference is further diminished where, as here, the suit is brought outside the plaintiff's home forum.   See Schoenefeld, 2009 WL 1069159, at *3 (citing Heyco, Inc. v. Heyman, 636 F. Supp. 1545, 1550 (S.D.N.Y. 1986)).   While

plaintiff appears to have selected New York in part because it is home to his counsel, the convenience of counsel is not relevant to the decision of whether to transfer venue. See GlaxoSmithKline Biologicals, S.A. v. Hospira Worldwide, Inc., No. 13 Civ. 1395 (PKC), 2013 WL 2244315, at *3 (S.D.N.Y. May 21, 2013); see also Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 374 (S.D.N.Y. 2006).

Accordingly, plaintiff's preference for a New York forum is not entitled to significant weight in our analysis. See Iyalla, 2005 WL 1765707, at *5.

**6. The Availability of Process to Compel Unwilling Witnesses**

The availability of process to compel unwilling witnesses has no impact on our analysis, as plaintiff has not identified any non-party witnesses who are within this district's subpoena power, let alone who would not be subject to process here. See Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006). Nevertheless, we note that the only potential witnesses identified by the parties thus far reside in Florida, and not in New York, such that it would be easier to secure their attendance in the Middle District of Florida than in the Southern District of New York.

**7. The Comparative Familiarity of Each District with the Governing Law**

13

It is true, as plaintiff submits, that a venue's familiarity with the governing state law is an additional factor to be considered. See Filmline (Cross-Country) Prods., Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989); Albert Fadem Trust, 214 F. Supp. 2d at 343. However, this factor is "generally given little weight in federal courts" because federal courts are deemed capable of applying the substantive law of other states. AEC One Stop Grp., Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004); see also Astor Holdings, 2002 WL 72936, at *13; Pilevesky v. Suntrust Bank, No. 10 Civ. 2290 (JS) (ETB), 2010 WL 4879006, at *5 (E.D.N.Y. 2010) (finding that this factor "weighs slightly in favor of transfer" when the transferee forum's law will govern dispute, but noting that "the tilt is slight, because federal courts are deemed capable of applying the substantive law of other states, particularly in a case . . . which involves rather routine questions of contract law") (internal quotation marks omitted). Thus, there is nothing to indicate that a federal court in Florida is incapable of applying New York state law to the instant dispute. See, e.g., Lamm v. State St. Bank & Trust Co., 889 F. Supp. 2d 1321, 1327-1331 (S.D. Fla. 2012) (applying New York state law to breach of contract claim).

Moreover, the choice of law provision in plaintiff's employment agreement requires only that New York state law be applied to plaintiff's breach of contract claim; federal law remains applicable to plaintiff's discrimination claim, whether applied in this district or in the Middle District of Florida. See Carr-Stock v. Orthotic Rehab. Prods., Inc., 832 F. Supp. 2d 229, 241 (W.D.N.Y. 2011) (concluding that comparative familiarity with governing law factor was neutral where complaint alleged two causes of action, a patent infringement claim arising under federal law and a breach of contract claim arising under Florida state law). As a result, we consider this factor neutral in our analysis.

### 8. Judicial Economy and the Interests of Justice

Courts can consider trial efficiency and general "interests of justice" when deciding whether to grant a motion to transfer. See Montgomery v. Tap Enterprises, Inc., No. 06 Civ. 5799 (HB), 2007 WL 576128, at *5 (S.D.N.Y. Feb. 26, 2007). Here, the parties have put forth no evidence of circumstances, such as crowded docket conditions, that might militate a speedier prosecution of the action in one forum as opposed to the other. See, e.g., De Jesus v. Nat'l R.R. Passenger Corp., 725 F. Supp. 207, 209 (S.D.N.Y. 1989). Thus, considerations of judicial economy do not change our conclusion that the substantial

balance of relevant considerations – particularly the convenience of the witnesses and parties and the locus of operative facts — weigh heavily in favor of transfer.

With respect to the interests of justice, we can only assume that plaintiff's counsel must have anticipated the possibility that GMP would seek to transfer, given that Florida is both its home state and the locus of nearly all of the operative events. Nevertheless, and despite this Court's practice of soliciting pre-motion letters, which made the possibility of a transfer motion a reality, plaintiff chose to litigate the motion rather than consent to the transfer. Any delay he has suffered or additional burden that will result from transfer can only be attributed to plaintiff's decision to bring his lawsuit in New York rather than in Florida.

* * *

Having reviewed the relevant factors, we find that they cumulatively counsel in favor of transfer. Transferring this case to Florida will economize the parties' resources, provide easy access to corporate records and potential witnesses, and will not unduly inconvenience either party. Accordingly, we conclude that section 1404(a) supports the transfer of this litigation to the Middle District of Florida.

16

**CONCLUSION**

For the aforementioned reasons, GMP's motion to transfer venue is granted. The Clerk of the Court is directed to terminate the motion pending at docket number 9 and promptly transfer this action to the United States District Court for the Middle District of Florida, Orlando Division.


**SO ORDERED.**

DATED:     New York, New York
           August  6, 2013

                    NAOMI REICE BUCHWALD
                    UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
Lee F. Bantle, Esq.
Amos B. Blackman, Esq.
Bantle & levy LLP
817 Broadway
New York, N.Y. 10003

**Attorneys for Defendant**
Marion B. Cooper, Esq.
Drinker Biddle & Reath LLP
1177 Avenue of the Americas, 41st Fl.
New York, N.Y. 10036

William R. Horwitz, Esq.
Drinker Biddle & Reath LLP
500 Campus Drive
Florham Park, N.J. 07932